UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF
AMERICA,

        Plaintiff,

v.                                                        Civil Case No. 18-20240
                                                           Honorable Linda V. Parker

SONJA EMERY,

        Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION AND SUPPLEMENTAL MOTION TO APPOINT INDEPENDENT FORENSIC PSYCHIATRIST (ECF NOS. 78, 92)

Defendant Sonja Emery stands charged with four counts of mail fraud, in violation of 18 U.S.C. § 1341; two counts of wire fraud, in violation of 18 U.S.C. § 1343; one count of corrupt endeavor to obstruct the Internal Revenue Service, in violation of 26 U.S.C. § 7212(a); and four counts of tax evasion, in violation of 26 U.S.C. § 7201.[1]  Before the Court are Defendant's motion and supplemental motion to appoint an independent forensic psychiatrist.  (ECF Nos. 78, 92.)  For the reasons that follow, the Court denies Defendant's motions.

---

[1] On November 1, 2018, this matter was reassigned from Judge Laurie J. Michaelson to the undersigned pursuant to Administrative Order 18-AO-041.

# BACKGROUND

On February 4, 2019, Defendant moved the Court for a competency evaluation pursuant to 18 U.S.C. § 4241. (ECF No. 50.) On March 25, Defendant and the United States of America ("Government") stipulated to and the Court issued an order for an evaluation by Dr. Mikel Matto, Assistant Clinical Professor for the University of California San Francisco ("UCSF") School of Medicine and Veteran Affairs Site Director at the UCSF Psychiatry Residency Training Program. (ECF No. 80-6 at Pg. ID 602.) The Government advised Dr. Matto that it would be financially responsible for the cost of the evaluation. (ECF No. 80-7 at Pg. ID 606.)

The parties state that, on or around March 28, the Government and Defendant's former counsel became aware that Defendant previously received medical attention within the UCSF network and, in order to "address any issue of inadvertent bias," (ECF No. 80-6 at Pg. ID 603), agreed to redact the names of the UCSF hospitals where Defendant was treated, as well as the names of the UCSF medical providers that provided the treatment. Dr. Matto also agreed to this course of action, stating in relevant part:

> "I have worked on and testified in cases in the past in which other physicians affiliated with UCSF have been involved. This is not unusual, as UCSF is the predominate tertiary care mental health provider for the San Francisco Bay Area. . . . I have not had any cases in which redaction of names was

> deemed necessary, but in an abundance of caution, this seems sensible and I can work with this."

(*Id*. at Pg. ID 602.)

There is no dispute that the Government obtained Defendant's relevant medical records, forwarded them to defense counsel for review, and subsequently forwarded them to Dr. Matto in mid-May. (ECF No. 80 at Pg. ID 480.) On July 1, Dr. Matto conducted a three-hour in-person evaluation. (ECF No. 80-8 at Pg. ID 609.) Dr. Matto ultimately found Defendant competent to stand trial and, on or around August 7, submitted his report to the Court. (ECF No. 80-8.)

One week later, Defendant and her former counsel moved the Court to enter an order allowing for withdrawal of counsel. (ECF No. 68 at Pg. ID 406.) The Court granted the motion and after appointment of new counsel, Defendant filed the present motion on October 9, stating that Defendant "did not agree to [the] waiver of conflict" concerning Dr. Matto and requesting that the Court enter an order appointing another psychiatrist to evaluate Defendant. (ECF No. 78 at Pg. ID 443.)

On October 25, the Court held a hearing with respect to the motion. During the hearing, Defendant requested time to obtain a "portal history" document, which identifies all persons who have accessed Defendant's electronic medical records. (Tr. at *37-38.) The Court granted the request and asked for a submission by no later than November 20, the day of the competency hearing. (Tr. at *39-40.)

3

At the beginning of the November 20 competency hearing, the Court inquired about the "portal history" document. Defense counsel did not produce the document, explaining that he received the wrong documents from the hospital. The Court extended the deadline, requesting an update by November 22 regarding when defense counsel expects to produce the "portal history" document.

On November 21, Defendant filed a supplemental motion, which includes arguments similar to those included in the original motion. (ECF No. 92.) Defense counsel also forwarded an email communication detailing the additional steps taken to obtain the "portal history" document, but noted that there is no definitive date by which he expects to receive the document.

## ANALYSIS

Defendant proffers two arguments in support of her motion to appoint an independent forensic psychiatrist. First, Defendant expresses concern "about a [] 'implicit' or 'unconscious' bias that exists in favor of an entity 'paying' for the cost of services." (ECF No. 78 at Pg. ID 442.) Defendant contends that "the Court, a neutral body, should compensate the doctor so that there is no appearance of 'compensation bias.'" (*Id.* at Pg. ID 443.) This argument is without merit.

"Under 18 U.S.C. § 3006A(h), the Judicial Conference of the United States is authorized to issue rules and regulations governing the operating of district plans created to furnish representational services (including counsel and investigative,

4

expert, and other services necessary for adequate representation) to financially eligible persons," including indigent defendants with counsel appointed pursuant to the Criminal Justice Act. CJA Guidelines, § 110.30(b). "Volume 7A of the Guide"—titled "Guidelines for Administering the CJA and Related Statutes" ("CJA Guidelines")—"is a compendium of Judicial Conference policy adopted pursuant to that authority." *Id*.

Chapter 3 of the CJA Guidelines—titled "Authorization and Payment for Investigative, Expert, or Other Services"—states that a court may direct the "psychiatric or psychological examination of individuals in connection with various proceedings to determine mental condition," including proceedings to determine "the mental competency of a defendant to stand trial." CJA Guidelines, § 320.20.10. The same chapter goes on to state that "[i]t is important to note that psychiatrists and related experts may be used in many circumstances in which payment is made from a source **other** than the CJA appropriation. In these situations, the court or the government selects the expert . . . ." and the Department of Justice ("DOJ") pays for the service. *Id*. at § 320.20.20(b) (emphasis in original). Notably, § 320.20.60 of the CJA Guidelines provides that, "regardless of which party requests," the "examination costs" for competency evaluations pursuant to 18 U.S.C. § 4241 shall be paid by the Department of Justice ("DOJ").

5

Here, Defendant's competency to stand trial was at issue and the DOJ paid for the examination. Defendant does not identify the legal basis for her request that this Court diverge from the CJA Guidelines regarding payment for such services. Nor does the Defendant point to any factually similar case in which a court has opted to do so. Moreover, Defendant does not identify any persuasive authority for concluding that the payment practice outlined in the CJA Guidelines creates an actual or potential conflict of interest. Nor does Defendant identify any basis for concluding that bias in fact resulted or that Dr. Matto's conclusions were influenced by the fact that his payment came from one government branch over another.

Indeed, Dr. Matto's hearing testimony further evidenced a lack of "compensation bias." He explained that forensic psychiatrists review the record objectively and answer the competency question posed by the Court. (Tr. at *28.) He further explained: "we are advocates for our opinion. We're not advocates for the defendant; we're not advocates for the prosecution . . . and who our check is coming from does not play in." (*Id.*)

Second, Defendant argues that the Court should order a second evaluation because Dr. Matto works for the same medical network in which Defendant was previously treated, which creates "conflict and bias as eluded [*sic*] to" in her motion. (ECF No. 78 at Pg. ID 446.) But Defendant points to no legal precedent

6

requiring the Court to order a second competency evaluation, particularly absent any demonstrated conflict of interest. In fact, the Sixth Circuit "ha[s] found no cases discussing a requirement of neutrality for court appointed experts." *Cheese v. United States*, 290 F. App'x 827, 830 (6th Cir. 2008).

Even assuming some neutrality requirement applies and that a conflict would raise due process concerns, the foundation for Defendant's allegations of bias and conflict as to Dr. Matto are tenuous at best. For example, Defendant asserts that Dr. Matto "could access her records via the 'portal' that all large medical centers utilize to quickly call up records of any patient they are treating (or evaluating)." (ECF No. 78 at Pg. ID 442.) But, Defendant fails to point to any evidence that (i) such a "portal" exists without limits on which doctors can access particular files; (ii) the portal contained information that was not already provided to Dr. Matto in preparation for the July 1 evaluation; or (iii) Dr. Matto in fact accessed any documents within the "portal."

On top of this, Defendant fails to explain how access to such hypothetical additional information would or could constitute undue influence that would impact or bias Dr. Matto's competency evaluation.

Defendant further asserts that "there was a potential [that] [Dr. Matto] would be her adversary" and that being evaluated by a physician affiliated with her primary doctors "would have chilled the doctor/patient relationship with her

7

treating physicians." (*Id*.)  However, Defendant offers no theory or evidence regarding how Dr. Matto would be her "adversary" and offers no explanation regarding how the forensic evaluation would or did "chill" her relationships with treating doctors—and the Court will not speculate to fill in these analytical gaps.

In addition, during the hearing, Dr. Matto made clear that he saw no potential conflict that could flow from the fact that Defendant's treating physicians were also a part of the UCSF network. (Tr. at *14.) Rather, conflicts arise when a patient and forensic psychiatrist have a treating relationship, which was not the case here. (*Id*.)  Dr. Matto also confirmed that (i) he did not have access to Defendant's electronic medical records, (Tr at *18); (ii) he did not learn the identity of any individual whose name was redacted from the Defendant's medical records, (Tr. at *16); (iii) he did not ask a colleague to access Defendant's electronic medical records, (Tr. at *19); and (iv) he did not review any records other than those provided to him by the parties, (Tr. at *23).  To date, Defendant has not offered evidence to the contrary.

## ADDITIONAL MATTERS

Although it is unclear whether Defendant requests expert assistance as contemplated in *Ake v. Oklahoma*, (see ECF No. 78 at Pg. ID 445), the Court finds that—even if so—Defendant fails to meet the requisite threshold criteria because Defendant is not proffering an insanity defense and her sanity at the time of the

8

alleged offense is not at all in question. *See* 470 U.S. 68, 70 (1985); *McWilliams v. Dunn*, 137 S. Ct. 1790, 1794, 1798 (2017).

Further, to the extent that Defendant requests expert assistance under 18 U.S.C. § 3006A(e)(1), such a request is untenable. A district court can authorize payment for expert services for indigent defendants only after "a demonstration that (1) such services are necessary to mount a plausible defense, and (2) without such authorization, the defendant's case would be prejudiced." *United States v. Pacheco*, 466 F. App'x 517, 521 (6th Cir. 2012) (citation omitted).

This Court granted the parties' request to appoint a psychiatrist to assist with the determination of whether Defendant is competent to stand trial. Case law establishes that a psychiatric evaluation is conducted to serve the Court—not a defendant. *See Estelle v. Smith*, 451 U.S. 454, 465 (1981) (describing as "neutral" a court-ordered examination used for the sole purpose of determining competency); *United States v. Abernathy*, 2009 WL 982794, at *3 (E.D. Mich. Apr. 13, 2009) (quoting FED. PROC. § 22:549, Hearing and Determination as to Competency) ("The determination of whether a defendant is mentally competent to stand trial is a question left to the sound discretion of the district court, with the advice of psychiatrists [or other mental health professionals]."). Because an additional court-appointed psychiatrist would merely furnish an opinion which the Court—as the final arbiter of competency—may accept or reject, the Court finds

9

an additional evaluation and opinion is not necessary to Defendant's ability "to mount a plausible defense."

## CONCLUSION

Ultimately, given the lack of actual conflict, as well as the tenuous and unsubstantiated nature of the potential conflict, the Court finds a second psychiatric evaluation unnecessary and is satisfied that it can determine Defendant's competency based on the current record.[2]

Accordingly,

**IT IS ORDERED** that Defendant's motion and supplemental motion to appoint an independent forensic psychiatrist (ECF Nos. 78, 92) are **DENIED**.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: December 17, 2019

---

[2] As of the date of this opinion and order, Defendant has not produced the "portal history" document. After obtaining the document, Defendant may submit a motion for reconsideration if the content of the document suggests such a motion is appropriate.