UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF
AMERICA,

      Plaintiff,

v.
                                      Civil Case No. 18-20240
                                      Honorable Linda V. Parker

SONJA EMERY,

      Defendant.
_____/

## **OPINION AND ORDER FINDING DEFENDANT COMPETENT TO STAND TRIAL**

Defendant Sonja Emery stands charged with four counts of mail fraud, in violation of 18 U.S.C. § 1341; two counts of wire fraud, in violation of 18 U.S.C. § 1343; one count of corrupt endeavor to obstruct the Internal Revenue Service, in violation of 26 U.S.C. § 7212(a); and four counts of tax evasion, in violation of 26 U.S.C. § 7201.[1]  This matter is presently before the Court on a stipulated order for an evaluation of Defendant's competency to stand trial.  (ECF No. 58.)  The Court held a competency hearing on November 20, 2019.  For the reasons that follow, the Court finds Defendant competent to stand trial in this action.

---

[1] On November 1, 2018, this matter was reassigned from Judge Laurie J. Michaelson to the undersigned pursuant to Administrative Order 18-AO-041.

## BACKGROUND

On February 4, 2019, "based upon Defendant's representations and discussions with her counsel," Defendant's former counsel moved the Court for a judicial determination of Defendant's mental competency to stand trial pursuant to 18 U.S.C. § 4241. (ECF No. 50 at Pg. ID 269-71.) The motion claimed that counsel, "during numerous discussions with [Defendant], ha[d] been informed [that] the Defendant is currently suffering cognitive impairment" resulting from an August 10, 2018 fall and attendant head injury. (*Id*. at Pg. ID 269-70.) The motion further explained that "Defendant has stated to counsel that she does not fully comprehend or understand the proceedings against her" and that "she does not feel . . . that she has the mental and cognitive abilities to adequately evaluate a potential resolution." (*Id*. at Pg. ID 271.) The United States of America ("Government") expressed skepticism regarding Defendant's claims of incompetency but agreed that an evaluation was appropriate. (ECF No. 51 at Pg. ID 275). On March 25, Defendant withdrew her motion and the Court issued a stipulated order for an evaluation of Defendant by Dr. Mikel Matto. (ECF Nos. 57, 58.)

On July 1, Dr. Matto conducted an in-person evaluation of Defendant and, on or around August 7, submitted a written report to the Court. (ECF No. 80-8.) In his report, Dr. Matto stated and explained his four conclusions: Defendant (i) "does not meet [the] diagnostic criteria for a disorder related to cognitive

impairment or mental health"; (ii) "has an adequate ability to understand the nature of the criminal proceedings"; (iii) "has an adequate ability to assist counsel properly in the conduct of a defense in a rational manner"; and (iv) "[b]ased on the above considerations, . . . is currently competent to stand trial." (*Id.* at Pg. ID 609-15.)

One week later, Defendant and her former counsel moved the Court to enter an order allowing for withdrawal of counsel. (ECF No. 68 at Pg. ID 406.) The Court granted the motion and, on September 12, Mark Magidson accepted the appointment to represent Defendant.

On November 20, the Court conducted a competency hearing pursuant to 18 U.S.C. § 4247(d), which was attended by Defendant, Dr. Matto, Mr. Magidson, as well as counsel for the Government. After the Government and Mr. Magidson questioned Dr. Matto regarding the report, the Court gave Defendant the opportunity to present additional evidence for the Court's consideration.

## LEGAL STANDARD

"[T]he Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Medina v. Cal.*, 505 U.S. 437, 439 (1992) (citations omitted).

Under 18 U.S.C. § 4241(a), a defendant or the Government "may file a motion for a hearing to determine the mental competency of the defendant," and

3

such a motion must be granted "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Prior to the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a report be filed with the court. 18 U.S.C. § 4241(b). During the hearing, a defendant "shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." 18 U.S.C. § 4247(d).

Following the competency hearing, the court must, based on a "preponderance of the evidence," make a determination as to the defendant's competency to stand trial. 18 U.S.C. § 4241(d). "[T]he bar for incompetency is high: a criminal defendant must lack either a 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' or 'a rational as well as factual understanding of the proceedings against him.'" *United States v. Miller*, 531 F.3d 340, 350 (6th Cir. 2008) (quoting *Drope v. Missouri*, 420 U.S. 162, 172 (1975)). The Sixth Circuit has further explained that:

> In making this determination, the district court must consider several factors, including the defendant's demeanor, any prior medical opinion regarding competency, and evidence of irrational behavior. *Miller,* 531 F.3d at 348; *Williams v. Bordenkircher,* 696 F.2d 464, 466 (6th Cir.

4

1983). An attorney's opinion about his client's competency is likewise a relevant factor. *United States v. Tucker,* 204 F. App'x 518, 520 (6th Cir. 2006) (citing *Owens v. Sowders,* 661 F.2d 584, 586 (6th Cir. 1981)); *United States v. Jackson,* 179 F. App'x 921, 933 (6th Cir. 2006). . . . In short, "[t]here are . . . no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." *Williams,* 696 F.2d at 466 (quoting *Drope,* 420 U.S. at 180).

*United States v. Willis,* 362 F. App'x 531, 534 (6th Cir. 2010) (second and third alterations in original).

Ultimately, "[t]he determination of whether a defendant is mentally competent to stand trial is a question left to the sound discretion of the district court, with the advice of psychiatrists [or other mental health professionals]." *United States v. Abernathy*, No. 08-20103, 2009 WL 982794, at *3 (E.D. Mich. Apr. 13, 2009) (alternation in original) (quoting Fed. Proc. § 22:549, Hearing and Determination as to Competency). But, "[t]he medical opinion of experts . . . is not binding on the court, since the law imposes the duty and responsibility for making the ultimate decision of such a legal question on the court . . . ." *Id.* (quoting Fed. Proc. § 22:549, Hearing and Determination as to Competency).

## ANALYSIS

After careful consideration of Dr. Matto's opinion, counsels' statements, Defendant's statements and behavior, and other evidence, the Court concludes that the record overwhelmingly establishes that Defendant is competent to stand trial.

*Awareness and Understanding of the Proceedings*

First, during her evaluation with Dr. Matto, Defendant demonstrated awareness and understanding of (i) the charges against her—she correctly stated that she is charged with "tax evasion," (ECF No. 80-8 at Pg. ID 633); (ii) the potential penalties—she stated that she will go to jail if sentenced to incarceration, will be "supervise[d]" if placed on probation, or "the charges go away" if she is found not guilty, (*id.*); (iii) court procedures—she discussed a defendant's right to not testify, a defendant's obligation to tell the truth if she chooses to testify, and the prosecutor's goal of ascertaining evidence of guilt when questioning a defendant (*id.* at Pg. ID 634); and (iv) the role of a public defender, prosecutor, judge, jury, defendant, as well as witnesses, (*id.*). *See Miller,* 531 F.3d at 348 (considering medical opinion when determining defendant's competency).

During the competency hearing, Mr. Magidson questioned Dr. Matto about the three neuropsychological exams conducted on Defendant and made much of several tests that Dr. Matto did not conduct. Dr. Matto explained that his decision to administer the three tests as opposed to others was of no great moment, particularly because the three tests were not required to answer the competency question. Even if he had not administered them, Defendant's medical records alone would have led him to the same conclusion.

Second, when questioned merely one month after her head injury, during an October 12 hearing before Judge Laurie J. Michaelson, Defendant confirmed her awareness and understanding of legal proceedings numerous times:

> **The Court:** . . . I received a troubling and unsatisfactory report about Ms. Emery's rude and uncooperative manner with the pretrial services officer. And Ms. Emery, when I let you remain on bond, which is a privilege, and be able to reside in California, another privilege, I told you that one of your conditions of bond is that you have to appear in court as directed. And if you're not able to do that, I have the authority to change your bond conditions, including ordering that you be detained, ordering that you come and reside in the Eastern District of Michigan. Do you understand that?
>
> **The Defendant:** Yes. . . . I'm sorry I was explaining to [the pretrial services officer] that I was trying to get additional information and she was not hearing me. So, I apologize to her if I was rude, but I was just trying to explain to her that I'm getting the run-around too . . . .
>
> **The Court:** . . . I just want to make sure you understand when you're directed to be in court in the future, you're going to need to be in court, do you understand that?
>
> **The Defendant:** I do.
>
> **The Court:** . . . And Ms. Emery, this arraignment is very similar and really the same as your prior arraignment. The purpose is to advise you of certain rights that you have in connection with this criminal case. To advise you of the charges that have been brought against you and the penalties that you could face if you're convicted or if you were to plead guilty, and to address any issues of bond, if necessary. So, I'll first advise you again and remind you that you do have a right to remain silent. You don't have to make any statements today about the charges that have been brought against you. And any statements that you make today, can be used against you in later proceedings. Do you understand that?
>
> **The Defendant:** Yes.

7

**The Court:** . . . Mr. Ribitwer is currently representing you. I understand that there is a possibility that that may change in the future and so I want to make sure that you understand that if, at some point in the future, he was not representing you and you could not afford a lawyer, you could ask The Court to appoint a lawyer for you, do you understand that?

**The Defendant:** Yes.

**The Court:** . . . Ms. Emery, do you understand the charges that have been brought against you in the superseding indictment?

**The Defendant:** Yes.

**The Court:** And do you understand that penalties that you could face if you were to plead guilty to Counts 1 through 11 of the superseding indictment?

**The Defendant:** Yes.

**The Court:** . . . I will continue the current bond conditions and I'll just advise Ms. Emery again that if you were to violate any of those current bond conditions, your bond could be revoked and you could be put in jail pending the trial, in this case, do you understand that?

**The Defendant:** Yes.

**The Court:** And again, failing to appear in court as directed is a separate offense for which you could also receive jail time. Do you understand that as well?

**The Defendant:** Yes.

(ECF No. 80-3 at Pg. ID 521-26.) *See Miller*, 531 F.3d at 350 (finding no reasonable cause to believe that defendant was mentally incompetent to stand trial

where defendant "engage[d] in colloquies with the district court during pretrial hearings").

Third, the Court has personally observed Defendant during hearings: she seems very much aware of who she is, where she is, and why she is before the Court. She nods as the Court speaks to her. She answers questions appropriately. She demonstrates a calm, pleasant demeanor, as well as lucidity and mental alertness. *See Maggio v. Fulford*, 462 U.S. 111, 117-18 (1983) (personal observations by trial judge determining competency entitled to deference); *United States v. Denkins*, 367 F.3d 537, 547 (finding no further inquiry into competence necessary where defendant did not "exhibit irrational behavior at the plea hearing, or otherwise act in a way that called his competency into question").

Though the Supreme Court cautions that "mental alertness and understanding displayed in . . . colloquies with the trial judge" does not justify "ignoring . . . uncontradicted testimony of [a defendant's] history of pronounced irrational behavior," *Pate v. Robinson*, 383 U.S. 375, 385-86 (1966), Defendant has no such history of bizarre or irrational behavior weighing against the mental alertness and understanding she displays during hearings.

Finally, pretrial services carefully documented its interactions with Defendant during the days and months following the August 10 head injury. This documentation further evidences Defendant's understanding and awareness of

9

legal proceedings and requirements, as well as Defendant's ability to take *affirmative* steps to comply with legal procedure:

- On August 15, 2018, Defendant stated that she has an upcoming MRI and "indicated she will contact her attorney . . . so her attorney can file another stipulation to ask for the temporary removal of the LM [("location monitoring")] transmitter again, and perhaps ask the Court to remove the condition altogether," (ECF No. 80-4 at Pg. ID 581);

- On October 11, 2018, Defendant "indicated that she provided [a no-travel] letter and her medical records to [her] attorney, which she thought that [the] attorney provided to the court," (*id.* at Pg. ID 571);

- On November 2, 2018, after pretrial services "inquired as to the purpose of LM," Defendant "asked that [pretrial services] email her these questions so she can forward [them] to the AUSA who opposes the removal of the LM condition. . . . She indicated she will speak to the government attorney and her supervisor to see if they can modify the condition," (*id.* at Pg. ID 563); and

- On December 4, 2018, Defendant discussed a mental health assessment she previously underwent and which she described as "mandated" by the court, (*id.* at Pg. ID 561).

The record demonstrates that, since her August 2018 head injury, Defendant has several times over confirmed her awareness and understanding of the legal proceedings associated with this matter.

*Ability to Consult with Attorneys*

The record is replete with evidence showing that Defendant possesses sufficient present ability to consult with her lawyer with a reasonable degree of rational understanding.

First, during her evaluation with Dr. Matto, Defendant demonstrated motivation to help herself, stating that she desires to disclose everything she knows about the events leading up to her arrest and wants "to get this resolved so that [she] can go back to [her] family." (ECF No. 80-8 at Pg. ID 634, 636.) She evidenced an ability to help plan legal strategy when she described a plea bargain, stated that she would consider alternate pleas after "talk[ing] to [her] lawyer first," and said that she would not testify if "a good lawyer" decided she should not. (*Id.* at Pg. ID 635.) She demonstrated an ability to cooperate rationally with counsel, stating that she could email counsel to express disagreement and explaining that "if [she] had someone to better interpret [legal concepts] for [her], [she] might have a better chance to help [her]self." (*Id.* at Pg. ID 635-36.) In addition, Defendant showed the capacity to challenge prosecution witnesses and ask her attorney clarifying questions regarding their testimony when necessary. (*Id.*) She also correctly detailed appropriate courtroom behavior—including acting "professionally," speaking only when the Court "ask[s] [her] a question," and expecting to be "remove[d]" if she speaks out of turn or moves around the courtroom without permission. (*Id.* at Pg. ID 636-37.) She then confirmed that she has never before had difficulty behaving appropriately in court.[2] (*Id.*); *see*

---

[2] During her psychiatric evaluation, Defendant discussed in detail her dissatisfaction with prior counsel. But, as the Sixth Circuit has made clear, "a defendant is not rendered incompetent to stand trial merely because he cannot get

11

*Miller,* 531 F.3d at 348 (considering medical opinion when determining defendant's competency).

Second, the record shows not only that Defendant has sufficient present ability to consult with her lawyer, but also that she *has* consulted with Mr. Magidson. The Court has witnessed Mr. Magidson pause and confer with Defendant during hearings before this Court. In fact, Mr. Magidson did just this during the competency hearing, before informing the Court that he had no additional questions for Dr. Matto. It appears Defendant further assisted counsel during the competency hearing when, as Mr. Magidson and Dr. Matto struggled to recall the name of a specific hospital at which she received treatment, Defendant leaned over to counsel, whispered, and Mr. Magidson immediately named the correct hospital. *U.S. v. Dubrule*, 822 F.3d 866 (6th Cir. 2016) (affirming that defendant possessed ability to consult with counsel where "trial transcripts [] indicate several instances in which [the defendant] apparently conferred with standby counsel"); *Miller*, 531 F.3d at 350 (finding no reasonable cause to believe that defendant was mentally incompetent to stand trial where defendant "was able to consult with his attorney during trial").

---

along with his counsel or disapproves of his attorney's performance." *Miller*, 531 F.3d at 349.

Third, there is abundant evidence that Defendant possessed the ability to consult with her prior counsel as well. For example, when asked by Judge Michelson in an October 2018 hearing if "[she] had the opportunity to review the superseding indictment and to discuss the charges with her lawyer," Defendant responded "[y]es." (ECF No. 80-3 at Pg. ID 524.) In addition, during her prior counsel's allocution, he stated that he forwarded discovery to Defendant and had "various conversations" with her—including discussions about bond negotiations with the Government, "moving toward a plea versus moving toward trial, and "the fact that she was inclined to go with a different lawyer." (*Id*. at Pg. ID 527-29); *see Miller*, 531 F.3d at 350 ("To the extent that . . . [there is] a question [about] Miller's ability to assist in his own defense, this concern was answered by his attorney's statement . . . that Miller did, in fact, consult and assist in his defense at trial . . . ."). During Defendant's allocution, Defendant stated that she wanted her prior counsel "to tell [her] what's best to do" because she is "not an attorney" and doesn't understand the Government's plea offer. … She further stated: "I have emails and emails where I get no response. . . . I just think he's too busy to represent me is the impression I get." (ECF No. 80-3 at Pg. ID 529-31.) When the Court asked if "more frequent contact" would constitute adequate representation, Defendant stated that "[she doesn't] have a problem with that." (*Id*. at Pg. ID 532.)

13

These exchanges do not appear to be those of a defendant unable to assist her counsel.

In addition, per a motion requesting a second psychiatric evaluation previously filed by Mr. Magidson on Defendant's behalf, (i) "[a]ccording to Ms. Emery[,] she . . . felt immediately that there was a conflict with doctors who are treating her and the evaluating doctor . . . ."; (ii) "[h]ad she been consulted[,] she would never have consented" to Dr. Matto conducting the competency evaluation; and (iii) "she did not agree to this waiver of conflict and this issue eventually caused a breakdown in the attorney client relationship resulting in the court permitting Mr. Ribitwer to withdraw." (ECF No. 78 at Pg. ID 442, 446.) This shows that, following her August 2018 head injury, Defendant identified what she believed to be a conflict and was so dismayed with her prior counsel's lack of consultation and communication that—as stated by Mr. Magidson—"she *protested*." (ECF No. 87 at Pg. ID 664 (emphasis added).) She sent her prior counsel an email stating that she no longer wanted him to represent her and ultimately decided to agree to prior counsel's motion to withdraw. (ECF No. 80-3 at Pg. ID 527). And while the Defendant alleges that her family—and not her—informed her prior attorney of this alleged conflict, it appears that Defendant—by herself—had sufficient ability to fill in her new attorney, Mr. Magidson, regarding the details of the alleged conflict. (ECF No. 78 at Pg. ID 438, 442-43.)

Finally, the Court finds it notable that Mr. Magidson has not *personally* complained about Defendant's inability to understand the proceedings or help in her own defense. When the Court asked defense counsel for any personal observations demonstrating Defendant's incompetence, Mr. Magidson offered none. Instead, he referenced a statement attributed to Defendant in Dr. Matto's report. Though Mr. Magidson conceded that he and Defendant have thus far interacted a limited number of times, this lack of complaint—which the Court would expect to be based on his own experience with Defendant—suggests that Defendant is in fact competent.[3] *See Tucker,* 204 F. App'x at 520) (finding no reasonable cause to believe that defendant was mentally incompetent to stand trial where none of defendant's attorneys expressed personal concern about competence); *Miller*, 531 F.3d at 350 (same); *see also Owens*, 661 F.2d at 586 ("It seems highly unlikely that counsel sensitive to this issue would not have complained further had [defendant] been unable to understand the proceedings or participate in his defense."); *Medina v. California*, 505 U.S. 437, 450 (1992)

---

[3] The day after the competency hearing, Mr. Magidson sent the Court an email with an attached letter which stated that he "saw in a recent message a text from Ms. Emery that she sent [him] asking [him] to call her because she could not understand what [Mr. Magidson] had texted to her. She wanted [him] to explain it." Even assuming that the content of Mr. Magidson's original text concerned a relatively simple concept, such an exchange does not suggest Defendant does not understand the proceedings or lacks an ability to help in her defense. Attorneys must often explain things to their clients.

("[D]efense counsel will often have the best-informed view of the defendant's ability to participate in his defense.").

In sum, Defendant has proffered no evidence demonstrating her inability to consult with her counsel.

## CONCLUSION

The Sixth Circuit has previously stated that "it does not follow that because a person is mentally ill he is not competent to stand trial." *United States v. Davis*, 93 F.3d 1286, 1290 (6th Cir. 1996) (internal quotations marks and citation omitted). Indeed, as Dr. Matto explained during the competency hearing, a defendant can be competent to stand trial even when the defendant suffered cognitive impairment.

Here, even if Defendant's August 2018 fall and attendant head injury caused some form of cognitive impairment, a preponderance of the evidence demonstrates that Defendant understands the nature of the proceedings against her and can work with counsel in preparing a defense. Thus, the Court finds Defendant competent to stand trial.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: December 17, 2019